**BOARD OF COUNTY COMMISSION-
ERS, COSTILLA COUNTY, Colo-
rado, Petitioner,**

v.

**COSTILLA COUNTY CONSERVANCY
DISTRICT and Michael McGowan,
Respondents.**

No. 02SC743.

Supreme Court of Colorado,
En Banc.

April 19, 2004.

Edwin J. Lobato Alamosa, Colorado, Attorney for Petitioner.

Kelly, Haglund, Garnsey & Kahn LLC, James W. Hubbell, Kaplan Kirsch Rockwell LLP, Lori Potter, Denver, Colorado, Attorneys for Respondents.

Hall & Evans, L.L.C., Thomas J. Lyons, Denver, Colorado, Attorneys for Amicus Curiae Colorado Counties, Inc.

Colorado Municipal League, Geoffrey T. Wilson, Denver, Colorado, Attorneys for Amicus Curiae Colorado Municipal League.

Bill Goldberg, Denver, Colorado, Attorney for Amicus Curiae Common Cause of Colorado.

Faegre & Benson LLP, Thomas B. Kelley, Steven D. Zansberg, Adam Lindquist Scoville, Denver, Colorado, Attorneys for Amici Curiae Colorado Press Association and Colorado Freedom of Information Council.

Justice BENDER delivered the Opinion of the Court.

## Introduction

In this case, we consider whether the Board of County Commissioners of Costilla County was required under Colorado's Open Meetings Law, § 24–6–401 to –402, 7B C.R.S. (2003) ("OML"), to give notice of a meeting called by two state agencies and a private mine that was attended by two county commissioners. The trial court held that the Board was not required to give notice of the meeting and entered a summary judgment order in favor of the Board. The court of appeals reversed, holding that the plain language of the OML required the Board to give notice of the meeting. *Costilla County Conservancy Dist. v. Bd. of County Comm'rs*, 64 P.3d 900 (Colo.App.2002).

Based on our interpretation the OML and our cases construing it, we hold that a local public body such as the Board is required to give public notice of any meeting attended or expected to be attended by a quorum of the public body when the meeting is part of the policy-making process. A meeting is part of the policy-making process when the meeting is held for the purpose of discussing or undertaking a rule, regulation, ordinance, or formal action. If the record supports the conclusion that the meeting is rationally connected to the policy-making responsibilities of the public body holding or attending the meeting, then the meeting is subject to the OML, and the public body holding or attending the meeting must provide notice.

In this case, neither the evidence in the record nor the trial court's findings of fact indicate that the Board adopted any rule, regulation, or ordinance, or took any formal action based on the information it received at the meeting. Absent any demonstrated link between the meeting attended by the two commissioners and the Board's policy-making responsibilities, there exists no basis to conclude that the meeting was subject to the OML. Hence we conclude that the Board was not required to give notice of the meeting under the OML.

In reaching this holding, we recognize that the OML is broad in application and should be construed to increase governmental trans-

parency in appropriate situations. However, there are limits to this principle, and in this case, the purposes of the OML would not be served by requiring notice. Thus, we reverse the judgment of the court of appeals and remand this case to that court with directions to return it to the trial court for reinstatement of the summary judgment order.

## I. Facts and Proceedings Below

From 1989 to 1996 Battle Mountain Resources, Inc. ("Battle Mountain") operated a gold mine a few miles northeast of San Luis, Colorado, the seat of Costilla County. The mine is situated on the banks of the Rito Seco stream, which is located within the boundaries of the Costilla County Conservancy District (the "District").[1] In August 1999, when the mine was undergoing reclamation, the Colorado Department of Public Health and Environment ("CDPHE") issued Battle Mountain a notice of violation and a cease and desist order because it discovered that waste had seeped into the Rito Seco from the mine's west pit.

A short time later, on September 20, 1999, the CDPHE, the Department of Natural Resources, and Battle Mountain held a meeting at the Hideaway Restaurant in Alamosa, Colorado. The purpose of the meeting was to report about Battle Mountain's efforts to comply with the CDPHE order and Battle Mountain's plans to take corrective action. Alfredo Chavez, an employee of the mine, invited all three of the commissioners of Costilla County to attend the meeting. Two commissioners, Charles Atencio and Virginia Cordova, attended. Also in attendance were the mayor of San Luis, the Costilla County Land Use Administrator and other county officials, several invited citizens of Costilla County, and representatives of the National Resource Conservation Service.

The commissioners did not provide public notice of the meeting, and the meeting itself was not open to the public. Commissioner Atencio testified that the Board did not provide notice because the meeting was not "a county meeting" and because the Board did not have any pending business related to the mine at the time of the Hideaway meeting.

The Hideaway restaurant was open to the public at the time of the meeting, and the meeting was held in a section that was visible to other patrons.

The commissioners who were present at the meeting did not actively participate. They did not make any presentations, ask any questions, or take part in any discussion. Both of the commissioners who attended testified that they listened passively to the highly technical presentation—which was beyond their expertise—ate the dinner provided them, and went home.

Both before and after the Hideaway meeting, the Board held regularly-scheduled meetings at which representatives from Battle Mountain gave presentations. These meetings were preceded by public notice and open to the public. At these meetings, the Battle Mountain representatives acknowledged that the Rito Seco had been contaminated by seepage from the mine's west pit. They took questions from the public and informed the attendees about Battle Mountain's compliance problems and its efforts to address the contamination.

Meanwhile, Battle Mountain reached a settlement regarding the notice of violation and cease and desist order issued by CDPHE. According to the terms of the settlement, Battle Mountain agreed to construct a water treatment facility, pay $86,700 in civil penalties, and pay $30,000 to the Costilla County Water and Sanitation Department in lieu of a fine.[2]

---

1. The District had long been involved in disputes with the mine. Because of the District's interest in protecting water resources, the organization opposed Battle Mountain in several water rights disputes, and has actively participated in other legal and administrative proceedings involving the mine.

2. According to the deposition testimony of Costilla County commissioner Virginia Cordova, the

$30,000 donation resulted from an independently negotiated agreement between Commissioner Espinoza, who did not attend the Hideaway meeting, and Ron Zumwalt of Battle Mountain. The trial court noted, without commenting on the circumstances of the agreement, that the county accepted the donation. There is no indication in the record that this agreement was ever discussed or voted on by the Board.

In accordance with this settlement, Battle Mountain applied for and received three building permits from the County Land Use Administrator, who had attended the Hideaway meeting, for the purpose of building a water treatment facility. Battle Mountain also applied for a discharge permit and donated the agreed $30,000 dollars to the Costilla County Water and Sanitation Department.

A few months after these events, the District filed a complaint in district court alleging the Board had violated the Colorado OML when it failed to give public notice of the Hideaway meeting. The OML is a complex statute, the central purpose of which is to ensure public participation in the policy-making process by requiring public access to a wide range of government meetings. In its complaint, the District alleged the Board violated the OML "by failing to provide public notice of the meeting at the Hideaway Restaurant ... at which public business was discussed."

The District relied on two subsections of the OML to support its argument. Both subsections apply to local public bodies, which include boards of county commissioners, and both require a board to give public notice of meetings where public business is discussed. Paragraph 402(2)(b) provides that all meetings held by a quorum of a local public body are to be open to the public whenever public business is discussed or when formal action may be taken:

> (b) All meetings of a quorum ... of any local public body ... at which any public business is discussed or at which any formal action may be taken are declared to be public meetings open to the public at all times.

Paragraph 402(2)(c) is somewhat broader, and requires that before any meeting may take place where formal action may be taken or where a quorum of a local public body is in attendance or expected to be in attendance, public notice must be provided:

> (c) Any meetings at which the adoption of any proposed policy, position, resolution, rule, regulation, or formal actions occurs or at which a majority or quorum of the body is in attendance, or is expected to be in attendance, shall be held only after full and timely notice to the public.

The trial court granted summary judgment in favor of the Board. The trial court acknowledged that a quorum of the Board attended the meeting and that the purpose of the meeting was to discuss public business, and thus the Hideaway meeting could arguably fall within the scope of the OML. However, the court cautioned that to construe the OML to require notice of a meeting that was not called or planned by the commissioners, and which the commissioners only passively attended, would lead to "an absurd result." If notice were required any time two commissioners attend a meeting called by another entity at which matters of public importance were discussed, the trial court reasoned, the commissioners would have to provide notice if they attended a local school board meeting, a Department of Transportation presentation about highway funding, or the Governor's State of the State address.

Given the lack of participation on the part of the commissioners at the meeting and the far-reaching implications of applying the OML to the Hideaway meeting, the trial court concluded that, taken as a whole, "the legislature never intended to include mere attendance at a meeting or presentation of other governmental agencies as a meeting of the board of county commissioners subject to the OML."

On appeal, the court of appeals reversed and held that the Board had violated the OML. *See Costilla County Conservancy Dist.*, 64 P.3d 900 (Colo.App.2002). That court concluded that section 24–6–402(2)(c) "clearly and unambiguously requires public notice of meetings at which a quorum of commissioners is expected to be present." *Id.* at 903. The court found nothing in the language of the Act to support the trial court's conclusion that the OML applies only to meetings that are called by a local public body, or meetings in which the members of a local public body actively participate. *Id.* Accordingly, the court of appeals held that because a quorum of the Costilla County

Board of Commissioners had been invited to the Hideaway meeting, a quorum of the Board was expected to attend the meeting, and the Board was therefore required to give notice under the OML.

We accepted certiorari to determine whether the Board was required to give notice of the Hideaway meeting.[3] Considering the statute as a whole and our case law construing the OML, we conclude that, as a threshold matter, the OML applies only to meetings that are part of the policy-making process. In this case, the record reveals that the Hideaway meeting was not convened for the purpose of discussing or furthering public policy, and therefore it was not part of the policy-making process. Thus, we hold that the Board was not required to give notice of this meeting, and we reverse the judgment of the court of appeals.

## II. Analysis

■ The sole issue we must address in this case is whether the Board was required to give public notice of the Hideaway meeting under the OML. Our interpretation of the OML involves a question of law, and accordingly we review the court of appeals' decision de novo. *United Airlines, Inc. v. Industrial Claim Appeals Office,* 993 P.2d 1152, 1157 (Colo.2000).

The District urges us to interpret the OML broadly. It argues that the OML is intended to allow citizens access to any information that influences a governing body to act or refrain from acting. To accomplish this broad goal, the OML requires notice of a meeting whenever a formal action may be taken, when a quorum is present, or when a

quorum is expected to be present. Under this interpretation, the District argues the Board was unquestionably required to give public notice of the Hideaway meeting.

The Board interprets the OML more narrowly. It argues that the OML requires a local public body to give public notice of a meeting when the meeting is convened to discuss or further the public business. In this case, the Board acknowledges that the activities of the mine were of concern to the citizens of Costilla County. However, the Board stresses that it did not have any pending business regarding the mine at the time of the Hideaway meeting. The Board contends the Hideaway meeting was merely an "educational" or "courtesy" briefing, and was not intended to influence any action on the part of the Board. Under the Board's interpretation of the OML, then, the Hideaway meeting does not fall within the purview of the OML because it was not convened to discuss or further public business. Thus, the Board claims it was not required to give public notice of the meeting regardless of whether a quorum of the commissioners was expected to attend.

To resolve this dispute, we now turn to the language of the OML and our case law construing it.

### A. Principles of Statutory Construction

■ As we consider the OML, we are guided by well-established principles of statutory construction. First, we construe the statute as a whole to give "consistent, harmonious and sensible effect to all its parts." *People v. Luther,* 58 P.3d 1013, 1015 (Colo. 2002) (internal quotation marks omitted). If

3. We accepted certiorari on the following issues:
1) Whether the Colorado Court of Appeals erred in concluding that the Board of County Commissioners of Costilla County violated the Open Meetings Law when it failed to give public notice of gathering attended by two Commissioners which was convened by the Colorado Department of Health and Environment (CDHE) [sic] and a private mining company for the purpose of providing information on what was required of the mining company in order to bring it into compliance with the regulations adopted by CDHE in its enforcement of the Colorado Water Quality Act.

2) Whether the court of appeals erred in concluding that the Colorado Open Meetings Law requires a local public body to give public notice of any gathering when a quorum of that public body is in attendance regardless of where the gathering is held, who convenes the gathering, what matters are discussed, the degree of participation by the local public body and, whether or not the local public body has any authority to take any formal action on the matters which are the subject of the gathering.

an interpretation of the statute would produce an absurd result, that interpretation is not favored. *Id.* A reviewing court must interpret a statute in a manner that gives effect to the General Assembly's intent. *Carlson v. Ferris,* 85 P.3d 504, 508 (Colo. 2003). To do this we begin with the language of the statute, giving words their plain and ordinary meaning. *Id.* If the statute is unambiguous, we look no further. *Luther,* 58 P.3d at 1015. If the language is ambiguous, however, we look to "legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of a statute." *Id.*

### B. The Open Meetings Law

The OML is intended to "afford the public access to a broad range of meetings at which public business is considered." *Benson v. McCormick,* 195 Colo. 381, 383, 578 P.2d 651, 652 (1978). We have sought to honor this aim by interpreting the OML broadly "to further the legislative intent that citizens be given a greater opportunity to become fully informed on issues of public importance so that meaningful participation in the decision-making process may be achieved." *Cole v. State,* 673 P.2d 345, 347 (Colo.1983).

The two subsections relied upon by the District are indeed broad and ensure public access to a wide range of government meetings. Paragraph 402(2)(b) appears unambiguously to require all meetings called by a local public body to address public business to be open to the public at all times. *See also* § 30–10–302, 9 C.R.S. (2003) ("The board of county commissioners shall met in open session and all persons conducting themselves in an orderly manner may attend its meetings."). And paragraph 402(2)(c) even broader in that it requires notice of any meeting where formal action will be taken or where a quorum of a local public body is either in attendance or expected to be in attendance.

Read in isolation, these two provisions lend support to the District's argument that the Board was required to give notice of the Hideaway meeting. Paragraph 402(2)(c) in particular appears to require notice in this case because all of the Costilla County commissioners were invited to attend the Hideaway meeting, and thus a quorum of the Board was "expected to attend."

However, when these provisions are read in the context of the statute as a whole, a different picture emerges. A "meeting" is defined by the OML as "any kind of gathering, *convened to discuss public business,* in person, by telephone, electronically, or by other means of communication." § 24–6–402(1)(b) (emphasis added). Although "public business" is not defined by the statute, the OML's declaration of policy provides: "It is declared to be … the policy of this state that *the formation of public policy is public business* and may not be conducted in secret." § 24–6–401 (emphasis added).

The language used in the declaration of policy suggests that the OML applies to meetings that are convened for the purpose of policy-making rather than, as the District argues, merely discussing matters of public importance. This interpretation finds further support in other provisions of the OML, which stress policy-making as the central focus of the Act.

For example, the definition of a "local public body" is "any board, committee, commission, authority, or other *advisory, policy-making, rule-making,* or other formally constituted body of any political subdivision of the state...." § 24–6–402(1)(a) (emphasis added); *see also* § 24–6–402(1)(c) (using nearly identical language to define a state public body). In addition, the OML requires certain records to be open to public inspection, such as the minutes of any meeting of a local public body "at which the *adoption of any proposed policy, position, resolution, rule, regulation, or formal action occurs or could occur.*" § 24–6–402(2)(d)(II) (emphasis added). And finally, if a public body holds a private meeting in violation of the OML, the remedy is to invalidate any "resolution, rule, regulation, ordinance, or formal action … taken or made" at the meeting. § 24–6–402(8).

These and other provisions of the OML all emphasize the actions associated with policy-

making, and require that the policy-making process be open to public view.

### C. Cases Construing the Open Meetings Law

We have also emphasized the policy-making aspect of meetings subject to the OML in our case law. In *Cole v. State,* for example, we held that legislative caucus meetings are subject to the OML and must be open to the public. *See Cole,* 673 P.2d at 349. The record in that case demonstrated that the caucuses were in reality de facto policy-making bodies. *Id.* at 348–49. Based on this evidence, we concluded that the OML prevents such a body from fully discussing and debating a measure in a closed meeting and then "rubber stamping" the same measure in an open session. *See id.* at 348–49.

Similarly, in *Bagby v. Sch. Dist. No. 1,* 186 Colo. 428, 528 P.2d 1299 (1974) we held that, under a precursor to the current OML, "superintendent conferences" were meetings that must be open to the public. In that case, the entire school board was invited to attend regularly scheduled meetings, convened for the purpose of discussing board business. The record indicated that "the agenda [of the meetings] was quite extensive and many of the same matters were acted upon later in ... properly called regular or special meetings." *Bagby,* 186 Colo. at 430, 528 P.2d at 1300. More troubling was the fact that matters that had been discussed at the closed sessions were "usually ... given only cursory treatment and put to a vote [at open meetings], thereby indicating that the underlying pros and cons for the final decisions had been previously dispensed with." *Id.* Under these circumstances, we held, "Regardless of whether formal action is taken, when a 'conference' ... is preceded by notice, and held with regularity at specific times and places for the purpose of discussing Board business," it must be open to the public. *Bagby,* 186 Colo. at 434, 528 P.2d at 1302; *see also Littleton Educ. Assn. v. Arapahoe County Sch. Dist.,* 191 Colo. 411, 553 P.2d 793 (1976) (precursor to OML applies to school board "executive sessions" convened to review progress of collective bargaining *and to determine future policy and strate-*

*gy* ); *Van Alstyne v. Housing Auth.,* 985 P.2d 97 (Colo.App.1999) (Housing Authority meetings held in private for the purpose of considering sale of real estate property violated OML where record showed the decision made during closed sessions was "rubber stamped" at subsequent public meetings.).

### D. The OML Applies to Meetings that are Part of the Policy–Making Process

Based on our reading of the statute as a whole and our case law construing it, we hold that a meeting must be part of the policy-making process to be subject to the requirements of the OML. A meeting is part of the policy-making process if it concerns a matter related to the policy-making function of the local public body holding or attending the meeting. If, as a threshold matter, a meeting is part of the policy-making process, then the requirements of the OML must be met. If not, nothing in the OML prevents some or all members of a local governing body from attending a meeting, even if public notice has not been given.

As the cases cited above and the statute itself illustrate, for a meeting to be subject to the requirements of the OML, there must be a demonstrated link between the meeting and the policy-making powers of the government entity holding or attending the meeting. Such a link exists, for example, when the meeting is convened to discuss or undertake one of the actions enumerated in the remedy provision of the OML such as a rule, regulation, ordinance, or formal action. *See* § 24–6–402(8). Or it may exist where the record demonstrates that a meeting was held for the purpose of discussing a pending measure or action, which is subsequently "rubber stamped" by the public body holding or attending the meeting. *See, e.g., Bagby,* 186 Colo. 428, 528 P.2d 1299 (1974); *Van Alstyne,* 985 P.2d 97 (Colo.App.1999). In any case, in order for a meeting to be subject to the OML, the record must demonstrate a meaningful connection between the meeting itself and the policy-making powers of the public body holding or attending the meeting.

## IV. Application

■ Applying these principles to the facts of this case, we conclude that the record does not establish any link between the Hideaway meeting and the policy-making function of the Board.

The Hideaway meeting was convened to discuss matters that were of concern to the citizens of Costilla County, but at the time the meeting was held, the Board was not considering any policy-making decisions or actions regarding the mine. Further, nothing in the record indicates that the meeting led to any rule, resolution, or formal action by the Board or that the Board subsequently "rubber stamped" any policy suggested or discussed at the Hideaway meeting.

It is true, as the District points out, that three weeks after the Hideaway meeting, the County Land Use Administrator, who had attended the meeting, issued Battle Mountain three building permits for the purpose of building a water treatment facility. It is also true that shortly after the meeting Battle Mountain agreed to donate $30,000 to the Costilla County Water and Sanitation Department. However, neither of these actions were linked in any way to the Hideaway meeting.[4] Neither the permits nor the donation were proposed or considered at the Hideaway meeting or subsequently "rubber stamped" at a later open meeting of the Board. And neither the evidence presented in the record nor the trial court's findings establish that the Board adopted any rule, regulation, or ordinance, or took any formal action based on the information it received at the Hideaway meeting. Thus, there is no basis to conclude that the Hideaway meeting was subject to the OML.

The District argues that the lack of any evidence connecting the matters discussed at the Hideaway meeting to any subsequent action on the part of the Board should not be "held against the people." The District contends that the OML is meant to allow citizens access to any information that might influence a public official to act or refrain from acting.

Attractive as this proposition may be, neither the language of the OML nor our cases construing it support such a broad and sweeping proposition. We agree that the OML should be construed as broadly as possible to increase governmental transparency when the meeting at issue is one where the public may legitimately take part in or gain insight into the policy-making process. But there is a limit to this principle. The OML does not require public access to any meeting of any sort that is attended by a quorum of a local public body.

If we were to adopt the District's position, the effect would be to make an already broad statute virtually limitless. As the trial court cautioned, if a meeting that is unconnected to the policy-making function of a local public body were subject to the requirements of the OML, then local public bodies would be required to give notice whenever a quorum of their members attend meetings on any public issue, such as the Governor's State of the State address, an educational seminar, a debate on a House or Senate bill, or on any matter that might influence local policy.

The OML does not impose such a requirement on local public bodies. Instead, the OML requires a local public body to provide notice of any meeting held or attended by a quorum of the public body when that meeting concerns matters that are related to the poli-

---

4. The District also suggests that the County Land Use Administrator acted in his capacity as the County Zoning Administrator when he issued the building permits. According to the Costilla County Land Use Code, "Any determination made by the Zoning Administrator may be appealed to the Board of County Commissioners." *Costilla County Land Use Code* § 4.5.H(a). The District relies on the potential appellate role of the Board to argue that a sufficient link exists between the Board's policy-making function and the permits, which the District implies were discussed at the Hideaway meeting.

This argument fails for two reasons. First, it is not entirely clear—and not a question before this Court—whether, in fact, the Board has appellate powers over the issuance of the building permits in this case. Second, there is no indication in the record that an appeal was ever filed. Thus, given the facts before us, we conclude that the Board's appellate powers, if any, are too far removed from any action taken in this case to establish a sufficient connection between the Hideaway meeting and the Board's policy-making powers.

cy-making function of that body. Nothing in the record establishes any connection between the Hideaway meeting and the policy-making function of the Board. The Hideaway meeting was not subject to the OML, and hence the Board was not required to give notice of the Hideaway meeting.

### Conclusion

For the reasons given above, we reverse the judgment of the court of appeals, and remand this case to that court with instructions to return it to the district court to reinstate its summary judgment order in favor of the Board.