**In the Matter of the Petition of Kevin SKRUCH, Petitioner–Appellee,**

v.

**HIGHLANDS RANCH METROPOLITAN DISTRICTS NOS. 3 AND 4, Respondents–Appellants.**

No. 03CA1332.

Colorado Court of Appeals, Division I.

Dec. 30, 2004.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Kevin Skruch, Pro Se.

Hahn, Smith, Walsh & Mancuso, P.C., David J. Hahn, Cynthia A. Calkins, Denver, Colorado, for Respondents–Appellants.

Opinion by Judge MARQUEZ.

In this action arising out the Fair Campaign Practices Act (FCPA), § 1–45–101, et seq., C.R.S.2004, respondents, Highlands Ranch Metropolitan Districts Nos. 3 and 4, appeal the order of the administrative law judge (ALJ) in favor of complainant, Kevin Skruch. We affirm.

The following facts are undisputed. The developed portion of the Highlands Ranch community is served by five metropolitan districts (the metro districts). In March 2002, the boards of the metro districts formed a citizens' panel, later named the "Enhance the Ranch Committee," to consider a bond election to fund certain community improvements. In June 2002, the boards formed the Highlands Ranch Metro Authority (Authority) to provide for the financing, construction, and management of the improvements.

In July 2002, the boards approved expenditures for the preparation, printing, and mailing of a brochure explaining the proposed improvements. The brochure was entitled "Enhance the Ranch Report to the Community." The brochures were mailed to Highlands Ranch residents on August 22, 2002. On August 27, 2002, the Authority fixed the title of a ballot initiative, later to be titled Ballot Issue 5A, calling for the bond election.

In October 2002, complainant filed a complaint under the FCPA with the secretary of state. Following a hearing, the ALJ issued an order finding that three checks, totaling $4178 and written by the boards after the date of the ballot title submission, constituted expenditures of public moneys to urge electors to vote in favor of Ballot Issue 5A and violated the FCPA. The ALJ ordered a fine of $300 against the metro districts. Only Districts 3 and 4 appeal the order.

None of the parties challenges the ALJ's conclusion that respondents are political subdivisions of the state and that August 27, 2002 is the date the ballot title was fixed by resolution of the metro districts. We are asked only to interpret applicable portions of the FCPA and determine whether the brochure complied with those provisions.

## I.

Respondents contend the ALJ erred in determining that the brochure urged electors to vote in favor of Ballot Issue 5A. We disagree.

The FCPA states in part:

No ... political subdivision [of the state] shall ... expend any public moneys from any source, or make any contributions, to *urge* electors to vote in favor of or against any:

. . . .

Local ballot issue that has been submitted for the purpose of having a title fixed pursuant to section 31–11–111 or that has had a title fixed pursuant to that section.

Section 1–45–117(1)(a)(I)(B), C.R.S.2004 (emphasis added).

Our review of the ALJ's interpretation of the statute is de novo. *League of Women Voters v. Davidson*, 23 P.3d 1266 (Colo.App.2001). In construing statutory provisions, our obligation is to give full effect to the legislative intent. To give effect to that intent, we look to the words used, reading them in context and according them their plain and ordinary meaning. *Bertrand v. Bd. of County Commrs.*, 872 P.2d 223 (Colo. 1994); *United Parcel Service, Inc. v. Huddleston*, 981 P.2d 223 (Colo.App.1999); *see* § 2–4–101, C.R.S.2004.

On review, an agency decision will be sustained unless it is arbitrary, capricious, unsupported by the evidence, or contrary to law. Even though an agency's construction of the statute should be given appropriate deference, its interpretation is not binding on an appellate court. *Coffman v. Colorado Common Cause*, 102 P.3d 999 (Colo.2004); *see United Parcel Service, Inc. v. Huddleston, supra* (when the underlying facts are undisputed, the issue presented is one of law, and we are not bound by the agency's determination).

In the written order, the ALJ made several findings of fact, which the parties do not dispute. In August 2001, the metro districts held a "survey and bond election planning meeting" to propose the funding of various community amenities. One of the agenda items at that meeting was identifying "allies and enemies" of the proposals. The metro districts began setting up the "Enhance the Ranch" panel composed of citizens who would support the proposed amenities. The panel invitation letter explained that the metro district boards were considering a bond election and that the panel would provide insight as the boards worked "toward a possible election."

The brochure, mailed five days before the ballot initiative title was set, was a four-page color flyer describing the proposed amenities and the work of the citizens' panel. The cover was subtitled "A Vision for the Heart and Soul of Highlands Ranch." Set off on the left column of page two by the use of italics and boldface type was the following statement: "The Enhance the Ranch Committee recommended that the Metro Districts hold a bond election to provide funds for these projects."

The ALJ found that the brochure "was entirely a positive description of the four projects" and "contained no argument against the projects." The ALJ concluded that "as a positive document, the brochure had the effect of encouraging Highlands Ranch residents to support the four projects." The brochure specifically mentioned a bond election, and local Ballot Issue 5A was that bond election. Therefore, the brochure "urged electors to vote in favor of 5A."

In *Coffman v. Colorado Common Cause, supra,* the supreme court held that § 1–45–117(1)(a)(I)(A), C.R.S.2004, anticipates that any spending of public moneys to urge the public to vote for or against a ballot measure violates its strictures, unless such spending is protected by one of several exemptions.

The FCPA does not define "urge," and no Colorado court has yet defined the term as it is used in § 1–45–117(1)(a)(I)(B). However, the FCPA provides that a political subdivision may expend public moneys to dispense a factual summary under certain conditions:

Nothing in this subsection (1) shall be construed as prohibiting ... any political subdivision [of the state] from expending public moneys or making contributions to dispense a factual summary, which shall include arguments both for and against the proposal, on any issue of official concern before the electorate in the jurisdiction. Such summary shall not contain a

conclusion or opinion in favor of or against any particular issue.

Section 1–45–117(1)(b)(I), C.R.S.2004.

Respondents argue that § 1–45–117(1)(b)(I) merely identifies "an exception to an exception." While we agree that this portion of the statute identifies an exception, it should be reviewed in conjunction with the prohibition of § 1–45–117(1)(a)(I)(B).

■ Section 1–45–117(1)(b)(I) defines what may be included in a factual summary, and the word "shall" indicates the terms of this provision are mandatory. *See Pearson v. Dist. Court*, 924 P.2d 512 (Colo.1996)(generally accepted and familiar meaning of "shall" indicates that this term is mandatory). Thus, any factual summary (1) must include arguments both for and against a proposal and (2) must not contain an opinion in favor of or against an issue.

In *Coffman v. Colorado Common Cause*, *supra*, the state treasurer agreed that, prior to the election, he issued three press releases advocating the defeat of Amendment 23, a statewide ballot measure. While the court did not address the definition of the term "urge," it held that the FCPA contemplates that when public funds are used to inform the public about a pending ballot measure, the information provided must represent both sides of the issue.

We conclude that the brochure in this case, when read in its entirety, did not present arguments for and against the issue. In fact, it took a position exclusively in favor of the issue, presented no contrary argument, and expressly advocated the passage of the bond initiative that was titled only days after the mailing of the brochure. Thus, it urged voters to vote for the initiative.

This conclusion is supported by the dictionary definition of "urge." *Webster's New Collegiate Dictionary* 1287 (1974) defines "urge" as "to present, advocate, or demand earnestly or pressingly." The brochure meets this definition.

Our conclusion is also supported by the opinions of courts in other jurisdictions that have addressed similar statutory language. Interpreting "urge" as used in a very similar statute, a Louisiana court stated: "We believe the average individual understands 'urge' to mean promote, take a position favorable or opposed to a particular candidate or proposition, or openly and publicly seek the election or defeat of a particular candidate, or the passage or defeat of a proposition submitted to the electorate." *Godwin v. East Baton Rouge Parish School Bd.*, 372 So.2d 1060, 1064 (La.Ct.App.1979).

A New York court has held that state law allows the expenditure of public funds to educate, inform, or urge the electorate to vote on a proposal so long as the communication does not "attempt to persuade the electorate either to approve or disapprove" the proposal. *Schulz v. State*, 148 Misc.2d 677, 678, 561 N.Y.S.2d 377, 378 (N.Y.Sup.Ct. 1990), *aff'd*, 175 A.D.2d 356, 572 N.Y.S.2d 434 (1991). The court concluded that phrases appearing in a pamphlet addressing an environmental quality bond act, such as "Keep New York Clean and Green" and "It [the act] is the ultimate selfless act," conveyed the message that the bond act should be approved. Accordingly, the court preliminarily enjoined further expenditure of state funds to promote the bond act.

Relying on *League of Women Voters v. Davidson*, *supra*, respondents nevertheless contend that even if the brochure is a positive document, there must be words of "express advocacy" and the brochure does not contain such words. We reject this contention.

The seminal case on campaign finance reform, *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), addressed the constitutionality of various provisions of the Federal Election Campaign Act. The Supreme Court held that to avoid invalidation on vagueness grounds, the Act's expenditure limits must be construed to apply only to communications that in "express terms" advocate the "election or defeat of a clearly identified candidate for federal office." *Buckley v. Valeo, supra*, 424 U.S. at 44, 96 S.Ct. at 646–47, 46 L.Ed.2d at 702.

In *League of Women Voters*, a division of this court interpreted the FCPA to mean that expenditure limits may be regulated only if the "actual words" of a political advertisement "expressly advocate" the election or defeat of an identified candidate. *League of Women Voters v. Davidson, supra*, 23 P.3d

at 1277. However, both cases address the election of identified candidates, and *League of Women Voters* did not address that portion of the FCPA covering issue-based elections. Nor did it interpret the provisions of the FCPA in question here.

Based on the wording of the brochure and our reading of the statutory provisions, we agree with the ALJ that the brochure urged electors to vote for the ballot initiative.

## II.

■ We disagree with respondents' contention that the ALJ erred by concluding that the statutory definition of "expenditure" did not apply to the metro district boards.

The FCPA was originally enacted in 1974, but it was repealed and reenacted by initiative in 1996 and was effective upon executive proclamation in January 1997. Portions of the FCPA were again repealed by a voter initiative passed in the November 2002 general election and effective in December 2002, after this complaint was filed.

The term "expend" is not defined in the FCPA, but respondents rely on the term "expenditure" as it is defined in the FCPA. The former § 1–45–103(6), now found in similar terms at Colo. Const. art XXVIII, § 2(8)(a), defined "expenditure" as the "payment, distribution, loan, or advance of any money by any candidate committee, political committee, issue committee, or political party" or "by a person for benefit of candidate committee, political committee, issue committee, or political party that is made with the prior knowledge and consent of an agent of the party or committee."

The ALJ concluded that political subdivisions of the state are not included within the entities listed in the definition of "expenditure"; thus, this definition did not apply to the metro districts.

However, respondents argue that the metro districts qualify as "persons" that could expend payments on behalf of the issue committee supporting Ballot Issue 5A, "Citizens for Enhance the Ranch," which was formed in September 2002. We disagree.

Colo. Const. art. XXVIII, § 2(11) (formerly codified at § 1–45–103(9)), defines "person" as "any natural person, partnership, committee, association, corporation, labor organiza-tion, political party, or other organization or group of persons." Even if we could stretch this definition to cover political subdivisions of the state such as the metro districts, respondents do not explain how the payments were "made with the prior knowledge and consent of an agent" of the issue committee that was not yet formed.

Thus, the ALJ did not err in concluding that the statutory definition of "expenditures" did not apply to the metro district boards.

## III.

■ We also disagree with respondents' contention that the ALJ erred by interpreting "expenditure" to occur when a payment is made *and* when there is a contractual agreement and the amount is determined under the FCPA.

Former § 1–45–103(6) (now found in similar terms at Colo. Const. art XXVIII, § 2(8)(a)) stated: "An expenditure occurs when the actual spending payments is made *or* when there is a contractual agreement and the amount is determined" (emphasis added).

Because, as discussed above, the ALJ concluded that the definition did not apply to this situation, the ALJ did not conclude that the issuance of the three checks after the date the ballot title was submitted constituted an "expenditure" under § 1–45–103(6). The ALJ found that "even if" he were to agree that the definition of "expenditure" found in § 1–45–103(6) applied to the metro districts, that finding would not amount to a defense for respondents' actions. The ALJ explained that the use of the word "or" was designed to reach both circumstances listed in the statute—the actual payment or the formation of a contractual agreement to make the payment.

We disagree with respondents that the ALJ misinterpreted the definition of "expenditure" to require that both the payment be made *and* a contractual agreement be determined before the submission of the ballot initiative title. The use of the disjunctive "or" indicates that an expenditure is made if *either* criterion is met after the ballot title is

submitted. *See Armintrout v. People,* 864 P.2d 576 (Colo.1993)(when "or" is used in a statute, disjunctive use is presumed unless legislative intent is clearly to the contrary); *City of Ouray v. Olin,* 761 P.2d 784 (Colo. 1988); *Cornforth v. Larsen,* 49 P.3d 346 (Colo.App.2002)(we presume the General Assembly intends a just and reasonable result, and a statutory construction that leads to absurd results will not be followed).

 Respondents also argue that because the contents of the ballot initiative were not determined until after the brochure was mailed, the ALJ erred by concluding the brochure urged passage of the initiative. We disagree.

The ALJ found that the brochure did not mention Ballot Initiative 5A by name, but concluded that the language of § 1–45–117(1)(a)(I) does not require that level of specificity. The statute prohibits "the urging of electors to vote a certain way." We agree with the ALJ.

Here, the record shows that the citizens' panel was formed to consider a bond election, that the panel stated its recommendation to hold a bond election in the brochure, and that, after the setting of the ballot initiative title, the panel formed an issue committee to urge passage of the initiative.

To the extent that respondents argue that the ALJ could not, as a matter of law, determine that the brochure urged passage of the initiative because the initiative was not admitted as an exhibit at the hearing, we decline to address this issue because it is raised for the first time in their reply brief. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990)(issue raised for the first time in the reply brief is not properly before an appellate court). We note that neither the record nor respondents' opening brief supports a conclusion that any question existed as to which ballot initiative was the subject of the bond election recommendation.

Therefore, we conclude the ALJ correctly ruled on the application of "expenditure" in the former statute.

Accordingly, the order is affirmed.

Judge KAPELKE and Judge HUME* concur.