Larry DARIEN, Dana Darien, Tom Williams, and Dan Brumbaugh, Plaintiffs–Appellants and Cross–Appellees,

v.

TOWN OF MARBLE Colorado, a body corporate; Town Council of the Town of Marble; and Hal Sidelinger and Robert Pettijohn, in their official capacities as members of the Town Council, Defendants–Appellees and Cross–Appellants.

No. 05CA0587.

Colorado Court of Appeals, Div. IV.

Nov. 16, 2006.

Rikki A. Santarelli, Almont, Colorado; Luke J. Danielson, Gunnison, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Caloia, Houpt & Hamilton P.C., Sherry A. Caloia, Mary Elizabeth Geiger, Robert Gavrell, Glenwood Springs, Colorado, for Defendants–Appellees and Cross–Appellants.

Geoffrey T. Wilson, Denver, Colorado, for Amicus Curiae Colorado Municipal League.

## JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS

Opinion by Judge CARPARELLI.

Plaintiffs, Larry Darien, Dana Darien, Tom Williams, and Dan Brumbaugh, appeal the trial court's judgment in favor of defendants, the Town of Marble, the Town Board of Trustees of the Town of Marble, and Hal Sidelinger and Robert Pettijohn in their official capacities as members of the Board (collectively the Town). The Town cross-appeals for an award of attorney fees. We reverse and remand for further proceedings.

Plaintiffs alleged that the Town violated the Open Meetings Laws (OML), § 24–6–401, et seq., C.R.S.2006, and particularly § 24–6–402(2)(c), C.R.S.2006, by not including specific agenda information regarding the Board's January 8, 2004 decision not to undertake a construction project at a town park. The trial court found no violation, and this appeal followed.

## I.

The Yule Marble Quarry, near the Town of Marble, is the source of marble that has been used for many well-known monuments, including the Tomb of the Unknowns in Arlington National Cemetery. Representatives for Arlington National Cemetery approached the owner of the quarry to obtain a replacement for the existing Tomb, which has deteriorated beyond long-term repair. The Marble Historical Society decided to oversee efforts to raise funds to quarry a new block for the Tomb. It appears from the record that the Historical Society asked the Town to appoint a committee to advise the Town Board regarding the project.

In October 2003, the quarry owner submitted a formal proposal to the Board that one block of marble be quarried as a replacement for the Tomb, that a second block be quarried as insurance against the possibility of damage to the first block during transport to Arlington, and that both blocks be placed at Mill Site Park for finishing. Mill Site Park is owned by the Town, and is the historic site of the mill at which Yule Marble was milled. The owner also proposed that, if the second block were not needed, it be kept and permanently displayed at the park.

The Town's Board authorized the mayor to appoint members to the Mill Site Committee, and to define the committee's roles and responsibilities to include advising the Board about gathering public opinion on the project and available options. The mayor proposed that the committee comprise two Board members, two Historical Society members, and two at-large members.

On November 1, 2003, the Mill Site Committee held a public meeting, which attendees described as ugly, divisive, and confrontational. The matter was discussed again at the November 6, 2003 Board meeting. The quarry owner presented the question of whether a museum and visitor center memorializing quarrying, carving, and transporting marble for the Tomb should be located in the Town. The Board permitted six citizens to address the issue.

When the committee met on November 19, those in attendance agreed that three additional members should be appointed to the committee. Plaintiff Dana Darien was selected as committee chair, and one of the Board members, defendant Hal Sidelinger, was selected as co-chair. The committee agreed to meet once in December and twice in January. The mayor informed the committee that its role was to advise the Board regarding ways to gather public opinion on the proposal, to develop options, and to present them to the Board. The mayor told the committee it needed to report back to the Board by February 5, 2004.

The agenda for the Board's regular December 4 meeting included, under the cap-

tion "Administrative," "Authorize Town Attorney to contact SBA." It also noted that the committee would meet on December 11.

The Small Business Administration (SBA) had conveyed the park property to the Town with a deed restriction that limited use of the property. The Board's meeting minutes show that the Board authorized the Town attorney to contact the SBA to obtain its opinion about whether a variance to the deed restriction could be obtained to permit the construction of a small nonprofit museum, gift shop, and visitor center at the park.

At the committee's December 11 meeting, the mayor rescinded the February 5 deadline to allow the committee more time to complete its work. The committee discussed options about how to gather valley-wide public opinion, agreed that a survey of property owners and voters was necessary, and agreed that it would be necessary to contact the mayor and the Historical Society about funding. It scheduled additional meetings for January 15 and January 29, 2004.

The Town posted notice that the Board's regular meeting would be held on January 8, 2004, together with the meeting agenda, which included fifteen minutes for the following:

6. Mill Site Committee Update   Hal        7:30 to
                                 Sidelinger 7:45 PM

• Authorization for Mill Site Committee survey expenditure(s)

• Endorse replacement of MSC member.

The following notices appeared below the agenda.

The next Town Board meeting will be held Thursday, February 5, 2004

The next Mill Site Committee meeting will be held Thursday, January 15 at 7:00 p.m. in the school.

At the January 8, 2004 Board meeting, Sidelinger read a portion of the Town's master plan that stated: "The community does not want to host more visitors by promoting, exploiting or otherwise marketing the Mill Site as an attraction. The historic site should be left in its existing state." Based on this part of the plan, Sidelinger said he could not support the project with a museum at the site. He also said he could support

the quarrying of the stone, and perhaps the carving of the stone, but felt there should be no permanent display of the second stone. Acting in his capacity as a member of the Board, he then made a motion that the Board not allow a permanent structure for the Tomb project at the site, nor allow the second block of marble to be on permanent display there. The Board approved and adopted the motion. The Board then appointed two new members to the Mill Site Committee to replace two who resigned. Although many townspeople who favored the project had attended several previous Board meetings on the project, none were present when the Board voted to reject it.

The minutes of the Mill Site Committee's January 15, 2004, meeting state that the committee's focus had changed and that the options that had been under consideration were no longer applicable because the Board had directed it to develop options for development of the site that fit the master plan. The committee cancelled the meeting that had been scheduled for January 29, 2004.

During Board meetings in February and March, plaintiffs and others protested the January vote. Plaintiffs wanted a chance to address the issue at the public meeting before the Board voted, and they asked the Board to rescind the January 8 vote. After the Board declined to do so, plaintiffs filed suit alleging violations of the OML.

## II.

Plaintiffs contend that the trial court erred when it concluded that the public notice for the January meeting complied with the OML. We agree.

### A.

Because the application of statutory requirements is a question of law, we review the trial court's decision de novo. *Charnes v. Central City Opera House Ass'n,* 773 P.2d 546 (Colo.1989); *People ex rel. Woodard v. Colo. Springs Bd. of Realtors, Inc.,* 692 P.2d 1055 (Colo.1984); *Elrick v. Merrill,* 10 P.3d 689 (Colo.App.2000).

In accordance with § 24–6–401, "the formation of public policy is public business and

may not be conducted in secret." To this end, a governmental body may hold a meeting at which it adopts, among other things, a policy or position only after "full and timely notice to the public." Section 24–6–402(2)(c). Such notice must be posted in accordance with the statute and include "specific agenda information where possible." Section 24–6–402(2)(c). The adoption of a policy or position without first providing "adequate and fair notice" to the public is contrary to the salutary purpose of the OML. *Benson v. McCormick,* 195 Colo. 381, 384, 578 P.2d 651, 653 (1978).

■ Yet the supreme court has also stated that the statute establishes a "flexible standard aimed at providing fair notice to the public." *Benson v. McCormick, supra,* 195 Colo. at 384, 578 P.2d at 653. When applying this flexible standard, we consider the nature of the governmental action, the importance of ensuring that the public has an opportunity to participate, and the extent to which giving notice would unduly interfere with the ability of public officials to perform their duties in a reasonable manner.

■ For example, because the nature of a committee meeting differs from that of a monthly board meeting, the requirement of full and timely notice for each also differs. *Benson v. McCormick, supra,* 195 Colo. at 384, 578 P.2d at 653. To ensure the public has an opportunity to participate, the absence of a measure's proponent or of a witness who has important information may require that consideration of a measure be postponed to a later date. And when there are unforeseen developments, it may be reasonable for a governmental body to consider unexpected measures regarding which no notice was given or to consider a measure out of order. *See Benson v. McCormick, supra,*

### B.

Here, the action was that of a public board, and the Board's action rejected a project in which there was significant public interest. The community had formed a committee, which was investigating alternatives, had conducted meetings, and was scheduled to conduct two meetings in January. The

Board had embraced the committee process, and the mayor had instructed the committee to suggest ways to obtain public opinion. Although the mayor first instructed the committee that it was to provide its report on February 5, he had extended that deadline before the Board met on January 8. It was anticipated that the new deadline would be in May.

The Board's approval of the committee process and the mayor's request for guidance on ways to obtain public opinion demonstrated that the community and the Board agreed that the public should be involved in the decision-making process. The Board made its decision regarding the project on January 8 in the absence of the project's proponents. Given the original deadline of February 5, and the mayor's grant of an extension of time beyond that date, it does not appear that giving notice of the Board's intention to make a final decision about the project at a later meeting would have unduly interfered with the Board's ability to conduct its business in a reasonable manner.

These circumstances inform our determination of whether the Town gave full and fair notice that the Board would make a decision regarding the project at its January 8 meeting.

### C.

■ The notice explicitly stated that there would be a Mill Site Committee update, that the update was scheduled to take fifteen minutes, that it would include authorization of funding for a survey of public opinion, and that it would also include the appointment of an additional committee member.

We perceive no ambiguity in this notice. It explicitly conveyed that the committee would bring the Board up to date regarding its activities. It also said the Board would consider whether to authorize funding for a public opinion survey. This agenda item was consistent with the circumstances known to the public at the time of the notice. At its previous meeting, the committee agreed to advise the mayor and the Historical Society that funds were needed to conduct such a survey. The notice also stated that the com-

mittee would meet again the following week. Thus, the notice did not say that the Board would make a final decision and provided no basis for the public to infer that the Board would vote on whether to accept or reject the project at its January 8 meeting. Nonetheless, the Town asserts that the word "update" constitutes specific agenda information and includes the possibility of a vote during a town meeting.

"Update" means to bring up to date, *Webster's Third New International Dictionary* 2517 (1986), or, to incorporate new information, *Random House Webster's College Dictionary* 1464 (1991). Although the trial court stated only that "update" *suggested* there would be a report and discussion, we conclude that it plainly conveyed that there would be a report and discussion.

Despite the plain meaning of update, the trial court stated that it would not be unusual for a discussion to lead to a consensus regarding the resolution of an issue and, on this basis, concluded that the notice complied with the statutory requirement.

However, the OML requires full and timely notice including specific agenda information. Although in other circumstances it might not be unusual for a discussion of an agenda item to lead to consensus regarding an issue, under the circumstances here, the notice did not provide full and fair notice that the Board would make a final decision regarding the project. Instead, the most straightforward meaning of the notice was that the committee would continue its work at a meeting the following week. To conclude otherwise would enable governmental bodies to act without notice regarding matters of broad public interest even when giving notice would not unduly interfere with the bodies' ability to perform their duties in a reasonable manner. This interpretation would defeat the explicit requirements of the OML.

We conclude that the notice here conveyed that the committee's work would continue and, hence, that there would not be a final decision regarding the project. Therefore, we conclude that the notice was not full, adequate, or fair under the circumstances.

### D.

The Town also contends that it complied with the statute in that it was not possible to provide specific agenda information regarding the vote because it did not know there would be a vote. We are not persuaded.

The statute requires that notice include "specific agenda information where possible." Section 24–6–402(2)(c). The Town does not contend that circumstances beyond the Board's control made it impossible to include notice of the vote. To the contrary, it contends that, upon the motion of Board member Sidelinger, the Board decided to depart from the specific matters stated in the agenda. Nor does the Town contend that urgent circumstances required an immediate decision. As already noted, the mayor's most recent extension of time to the committee indicates there was no urgency.

We must interpret and apply the phrase "where possible" in a manner that is consistent with the OML's purpose of ensuring that public policy is not formulated in secret. Here, we conclude that the phrase "where possible" does not relieve the Board of the requirement to provide full and fair notice including specific agenda information. Given the Board's awareness of the extensive public interest, the absence of the project's proponents from the meeting, the lack of urgency, and the absence of evidence that postponement of the decision would have unduly interfered with the ability of the Board to perform its duties, application of the statutory phrase "where possible" as urged by the Town would be contrary to the OML's requirement of full notice. To decide otherwise would enable the Town to resolve a matter of known public interest away from the scrutiny of those known to be the most interested.

Therefore, we conclude the trial court erred when it held that the notice complied with the OML.

Under § 24–6–402(9), C.R.S.2006, in any action in which the court finds a violation of the section, the court has the authority to enforce the section by injunction and shall

award the prevailing citizen reasonable costs and attorney fees. Accordingly, we remand to the trial court with instructions to issue an order declaring the January 8 vote regarding the project void and enjoining the Town to give public notice in accordance with the OML if it intends to vote on the Mill Site Park project again. We also direct the trial court to award plaintiffs their reasonable costs and attorney fees.

Because we reverse, we need not address the Town's cross-appeal for an award of attorney fees.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge J. JONES concurs.

Judge CASEBOLT dissents.

Judge CASEBOLT dissenting.

In my view, the Town of Marble provided full and timely notice of its January 8, 2004, meeting and supplied the specific agenda information that the Open Meetings Law, § 24–6–401, et seq., C.R.S.2006, requires. I therefore respectfully dissent.

The Open Meetings Law, an initiative proposed and passed into law by the Colorado electorate, reflects the considered judgment of the People that democratic government best serves the commonwealth if its decisional processes are open to public scrutiny. Indeed, the statute's declared purpose as set forth in § 24–6–401 is "that the formation of public policy is public business and may not be conducted in secret." To that end, the statute provides public access to a broad range of meetings at which public business is considered. *Benson v. McCormick*, 195 Colo. 381, 578 P.2d 651 (1978); *see also Bd. of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188 (Colo.2004).

The statute should be interpreted broadly to further the legislative intent that citizens be given a greater opportunity to become fully informed on issues of public importance, so that meaningful participation in the decision-making process may be achieved. *See Cole v. State*, 673 P.2d 345 (Colo.1983).

Section 24–6–402(2)(c), C.R.S.2006, the operative provision at issue here, states:

Any meetings at which the adoption of any proposed policy, position, resolution, rule, regulation, or formal action occurs or at which a majority or quorum of the body is in attendance, or is expected to be in attendance, shall be held only after full and timely notice to the public. In addition to any other means of full and timely notice, a local public body shall be deemed to have given full and timely notice if the notice of the meeting is posted in a designated public place within the boundaries of the local public body no less than twenty-four hours prior to the holding of the meeting. The public place or places for posting such notice shall be designated annually at the local public body's first regular meeting of each calendar year. The posting shall include specific agenda information where possible.

There are two key phrases in this provision. The first, "full and timely notice," is not a defined term in the statute. As the court recognized in *Benson v. McCormick, supra,* 195 Colo. at 383, 578 P.2d at 653, the plain language of the Open Meetings Law "neither establishes the manner in which notice must be given nor defines the content of the required notice." Instead, the term "establishes a flexible standard aimed at providing fair notice to the public." *Benson v. McCormick, supra,* 195 Colo. at 383, 578 P.2d at 653.

The second phrase, added to the statute in 1991, mandates that "[t]he posting shall include specific agenda information where possible." That phrase is not defined in the statute, and there are no Colorado authorities interpreting or applying the term. Accordingly, this case presents an issue of first impression.

We review statutory interpretation de novo. *McCall v. Meyers,* 94 P.3d 1271, 1272 (Colo.App.2004).

Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. *Colo. Dep't of Revenue v. Woodmen of World,* 919 P.2d 806 (Colo.1996); *Jones v. Cox,* 828 P.2d 218 (Colo.1992). We look primarily to the lan-

guage of a statute to determine legislative intent. *Jones v. Cox, supra*, 828 P.2d at 221. In determining the meaning of a statute, we must adopt a construction that will serve the legislative purposes underlying the enactment. *Howard Elec. & Mech., Inc. v. Dep't of Revenue*, 771 P.2d 475, 479 (Colo.1989).

When reviewing a specific provision of a statute, we consider the statutory scheme as a whole in an effort to give consistent, harmonious, and sensible effect to all its parts. We give words and phrases their plain and ordinary meaning. *Bd. of County Comm'rs v. Costilla County Conservancy Dist., supra*, 88 P.3d at 1192–93.

We presume that the General Assembly intends a just and reasonable result, § 2–4–201(1)(c), C.R.S.2006, and one that is feasible of execution. Section 2–4–201(1)(d), C.R.S. 2006.

Applying those principles here, I note that in the second key phrase, the statute employs the word "posting" to refer to the physical notice that the public body places in a designated spot.

The statute indicates this posting "shall include" certain information. The word "shall" essentially means "must." Thus, there is an obligation to include the designated information. *See Skruch v. Highlands Ranch Metro. Dists. Nos. 3 & 4*, 107 P.3d 1140 (Colo.App.2004).

When posting is used as the method of notification to the public, the statute requires that the physical document be placed in the designated spot no less than twenty-four hours before the meeting commences. Thus, the statute defines a point in time at which the obligation must be met.

"Agenda information" connotes a list of things to be done or considered, as items of business or discussion to be brought up at a meeting. *See Blacks Law Dictionary* 85 (7th ed.1999); *Pokorny v. City of Schuyler*, 202 Neb. 334, 275 N.W.2d 281 (1979)(purpose of agenda requirement is to give some notice of the matter to be considered). And "specific" means definite or explicit. *See Black's Law Dictionary, supra*, at 1406.

"Where" in the context of "where possible" has several potential meanings. The word can mean location, *see Vsetecka v. Safeway Stores, Inc.*, 183 Or.App. 239, 51 P.3d 688 (2002), *rev'd on other grounds*, 337 Or. 502, 98 P.3d 1116 (2004), but that meaning does not fit here, because the statute already designates the place. In other contexts, "where" can mean "whenever," *see People v. Seto* 162 Misc.2d 255, 616 N.Y.S.2d 890 (N.Y.Sup.Ct.1994), or "if." *See B.F. Avery & Sons Co. v. Davis*, 192 F.2d 255 (5th Cir. 1951), *disapproved of in part on other grounds by Katchen v. Landy*, 382 U.S. 323, 338–39, 86 S.Ct. 467, 477–78, 15 L.Ed.2d 391 (1966). Giving a consistent, harmonious, and sensible effect to all parts of the statute requires "where" in this context to mean "when" or "if."

"Possible" has been defined as falling or lying within the powers of an agent, being within or up to the limits of one's ability or capacity, falling within the bounds of what may be done or may be attained, *Webster's Third New International Dictionary* 1771 (1976); capable of happening, occurring, or being done, *American Heritage Dictionary* 1370 (2000); or within a person's power, *Shorter Oxford English Dictionary* 2295 (2002).

In turn, "if possible" has been defined to mean "if feasible" or "if practicable," and implies the exercise of discretionary judgment. *See Headid v. Rodman*, 179 N.W.2d 767 (Iowa 1970); *State ex rel. Bd. of Fund Comm'rs v. Holman*, 296 S.W.2d 482 (Mo. 1956).

Reasoning from these interpretations, and in the context of "fair notice," I conclude that the information that must be included within such a posting is whatever definite items of business or issues for discussion the public body knew or intended would arise when it posted the notice. Knowledge of or intent concerning what will arise or what will be decided is required because it would be unreasonable and unworkable to require the notice-giver to include in such posting items of which he, she, or it is unaware or does not intend will be discussed or acted upon. It is not feasible or practicable to include in a notice something about which the notice-giver does not know. *See* § 2–4–201(1)(c) (pre-

sumption that the General Assembly intends a just and reasonable result); § 2–4–201(1)(d) (presumption that the General Assembly intends a result that is feasible of execution); *Brady v. City & County of Denver*, 181 Colo. 218, 508 P.2d 1254 (1973)(no provision of the law should be interpreted in a way that requires an impossible task); *cf.* § 24–6–402(7), C.R.S.2006 (clerk of local public body shall maintain list of persons who have requested notification of meetings when certain specified policies will be discussed and shall provide reasonable advance notice of such meetings, "provided however, that *unintentional* failure to provide such advance notice will not nullify actions taken at an otherwise properly published meeting" (emphasis supplied)).

To the extent the statutory phrase "where possible" is ambiguous, examination of the legislative intent reveals support for this interpretation. *See Allely v. City of Evans*, 124 P.3d 911 (Colo.App.2005) (if the language of a statute is ambiguous or conflicts with other provisions, court may look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme).

Representative Adkins offered the addition of the phrase "where possible" to the statute in the 1991 amendment to the Open Meetings Law. As her justification, she stated that "where possible" should be added because "you can't get an absolute agenda for every meeting, so I think you need the clarification [of] where possible." Hearings on S.B. 91–33 before the Senate Judiciary Committee, 58th General Assembly, 1st Session (Feb. 26, 1991).

Therefore, the fairness and adequacy of the notice should be judged by what the notice-giver knew would be done or discussed, or intended would be done or discussed at the meeting, as measured at the time the notice is posted. Thus, when a public body or one of its members knows or intends that a definite item will be discussed or that a particular action will be proposed, it is clearly within his, her, or its capacity or ability to have that item included in the agenda contained in the public notice.

Here, no member of the Town Board had an intention to propose to take or actually to take final action on the mill site issue at or before the time the notice of the January 8 meeting was posted, and no member knew that such action would occur. Indeed, the person who made the motion to preclude a permanent structure for the Tomb project at the mill site testified at trial without contradiction that he had no preconceived intent or plan to do so. Instead, he formulated the motion only after discussion of the issue ensued when the "Mill Site Committee Update" item arose at the meeting. In addition, the town clerk, who prepares the notice of regular monthly meetings, testified without contradiction that she had no indication that any action was intended or would be proposed on the mill site issue.

Thus, the Town included within its posting all specific agenda information that was possible to include at the time it posted its notice. Accordingly, I disagree with the majority's determination that the public notice given for the January 8 meeting did not comply with the Open Meetings Law. It is clear from the record that the Board had no intention to make a final decision when the notice was posted and that none of its members or employees knew such action would be proposed or taken. The Board's lack of such knowledge or intent renders the notice full and timely, and the notice thus complies with the requirement that it include specific agenda information "where possible."

The majority acknowledges that the public notice did not convey that the Board would make a decision on the project. The notice specified that there would be a "Mill Site Committee Update" and that there would be "authorization for Mill Site Committee Survey expenditure(s)" and "replacement of a committee member." Such matters are what the Board knew would be discussed or authorized. Contrary to the majority, I do not think the statute requires more.

Given my analysis of what the statute requires, I do not perceive that the Board was prohibited from acting upon the motion concerning the placement of a permanent structure at the mill site during its January 8 meeting simply because the posted notice did

not state that such action might occur. As the court noted in *Benson v. McCormick, supra,* when there are unforeseen developments, as here, it may be reasonable for a governmental body to consider unexpected measures regarding which no notice was given. And while it is unfortunate that supporters of a permanent structure at the mill site were not present when the Town Board acted, courts should not invalidate actions of a governmental body for that reason alone. Instead, only when a statutory violation occurs will such actions be negated. *See* § 24–6–402(8), C.R.S.2006 (no formal action shall be valid unless taken or made at a meeting that meets the requirements of § 24–6–402(2)); *Hyde v. Banking Bd.,* 38 Colo.App. 41, 552 P.2d 32 (1976).

Nothing in the Town Board's actions before January 8 persuades me that a different result is warranted. Clearly the Town was interested in obtaining public input concerning the project: it had placed some of its board members on the Mill Site Committee and had asked the Committee to report to the Board. However, the record establishes that the Board had never committed to take a public survey and had never told the Committee or the public that it would wait until a particular date before making any decision on the issue.

Moreover, while it is true, as the majority states, that giving notice of the Board's intention to make a final decision regarding the project (assuming it had such an intention, which it clearly did not here) would not have unduly interfered with the Board's ability to conduct its business in a reasonable manner, I do not construe the Open Meetings Law to require that the Board affirmatively state that such action might occur at an upcoming meeting before such action can be valid under the law. The key issue in this case is not what information *could be* included in the notice; rather, the issue is what information the statute *requires* to be included. While the General Assembly could have limited a public body to taking action only on those items and topics and only to the extent specifically identified in its agenda, it did not do so. The statutory language simply states no such thing.

The majority's determination can be read to limit a board to doing only those things specifically stated in the notice and to preclude any action or discussion outside the narrow boundaries set thereby. Because the Open Meetings Law was not intended to "interfere with the ability of public officials to perform their duties in a reasonable manner," *Benson v. McCormick, supra,* 195 Colo. at 383, 578 P.2d at 653, and because the majority's view could unduly delay decisions of public officials, I cannot subscribe to it. In my view, the more flexible standard of including in the posted notice only those things that a board knows or intends will occur better serves the policy of noninterference. Hence, actions that were not foreseen or intended at the time notice is posted are not invalid.

In summary, this case does not present a situation in which decisional processes were closed to public scrutiny. Nothing in this case was decided in secret; indeed, the action was taken at an open meeting. Because it was not possible to include in the notice an action that no Town Board member contemplated at the time the notice was posted, I would conclude the Town complied with the Open Meetings Law.