No. 26538

Terry L. Bagby, Marilyn Ferrari, Jessie Luna, Fred N. Thomas, and Kenneth S. Valis v. School District No. 1, Denver, Colorado; The Board of Education School District No. 1, Denver, Colorado, Omar Blair, Robert L. Crider, Theodore J. Hackworth, Jr., Katherine W. Schomp, James C. Perrill, Frank K. Southworth, and Bernard Valdez, as members of the Board of Education, School District No. 1, Denver, Colorado

(528 P.2d 1299)

Decided November 11, 1974. Opinion modified and as modified rehearing denied December 23, 1974.

Jeremy Shamos, for plaintiffs-appellees and cross-appellants.

Henry, Cockrell, Quinn & Creighton, Benjamin L. Craig, Peter J. Wiebe, Jr., for defendants-appellants and cross-appellees.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

Plaintiffs instituted an action alleging that defendant Denver Board of Education, herein called the Board, had conducted meetings in violation of the public meeting law. The Denver district court found for the plaintiffs, and issued an injunction. We affirm the lower court's holding, but remand for that court to enter an injunction consonant with the views expressed herein.

I.

The principle question presented to the trial court was whether certain gatherings of the Board called "superintendent's conferences" were meetings within the meaning of the statutes pertaining to open meetings. C.R.S. 1963, 3-19-1 and 1965 Perm. Supp., C.R.S. 1963, 123-30-8.

Although no final formal action was taken, Board matters were thoroughly discussed at superintendent's conferences. All members of the Board were given advance notice and usually all attended. The record shows that the agenda was quite extensive and many of the same matters were acted upon later in the properly called regular or special meetings which the public attended. However, they usually were given only cursory treatment and put to a vote, thereby indicating that the underlying pros and cons for the final decisions had been previously dispensed with during the superintendent's conference when the public was excluded.

Plaintiffs commenced this action for injunctive relief. They alleged that superintendent's conferences came within the tenor and spirit of the public meeting law, and should be open to the public. Although no answer to the complaint was filed, the main issues were joined and tried during the hearing on plaintiffs' motion for a preliminary injunction. The complaint stood as denied. The court entered a final injunction order which provides: (1) policy matters may not be conducted without first advising the public; (2) if a conference is called, an agenda must be made public in advance; (3) the Board may consider non-public and secretive matters only in executive session held pursuant to a statutory public meeting session. Both parties have appealed.

Plaintiffs seek to clarify the order. They feel the term "policy" is confusing, and that all important matters of the Board should be conducted in open session. They also seek a direct command to the Board to admit the public to the superintendent's conferences and any other relevant meetings, an item omitted from the order.

Defendants moved to quash the court injunction contending that the Board should be able to confer privately so long as no formal action is taken. They state there was no violation of state law since no decisions were made when the public was not present. Moreover, they claim that any limit on their power is contained exclusively in section 123-30-8, the specific Board statute. They would have us hold the general meeting statute, section 3-19-1, not applicable to school boards.

## II.

We take up first the question of which statute governs, *i.e.,* C.R.S. 1963, 3-19-1, entitled "Public Meetings," or 1965 Perm. Supp., C.R.S. 1963, 123-30-8, entitled "Meetings of the board of education."

The Board opts for section 123-30-8 as a definite, all-encompassing law applying specifically to school board meetings. There is no allegation that section 123-30-8 *expressly amended or repealed* C.R.S. 1963, 3-19-1. Rather, the Board advances a rule of statutory construction that

section 3-19-1 is a general law and that the later 1965 enactment is more specific and therefore prevails over the general one.

We prefer a construction that gives meaning to both if they are harmonious and can be read in *pari materia*. There is nothing in the plain meaning of the language of section 3-19-1 which renders it inapplicable to school board meetings. There is no question that school districts are political subdivisions of the state, created by law. and supported in their activities with public funds. *Newt Olson Lumber Co. v. School District No. 8,* 83 Colo. 272, 263 P. 723 (1928). Nor is there any language within the statute itself which would suggest that it is *not* applicable to the school board. One should exclude application of one statute over the other only when there is an irreconcilable conflict between the two. *Marshall v. Golden,* 147 Colo. 521, 363 P.2d 650 (1961); *Casados v. People,* 119 Colo. 444, 204 P.2d 557 (1949); *Nelson v. Nelson,* 72 Colo. 20, 209 P. 810 (1922); *People v. Field,* 66 Colo. 367, 181 P. 526 (1919). As we said in *Burton v. Denver,* 99 Colo. 207, 61 P.2d 856 (1936):

"* * * statutes are of equal dignity save that when in irreconcilable conflict we read into the last a repeal by *necessary* implication. * * * *They must be construed in pari materia and if possible * * * reconciled.* This rule applies with peculiar force to acts passed by the same legislature * * *." (Emphasis added.)

The trial court found, and we agree, that "[t]he statutes * * * are not contradictory, but can be interpreted in harmony with what the legislature was prohibiting and requiring public agencies and bodies * * * to do in the public interest." Consequently we hold that the 1965 enactment of section 123-30-8 does not supersede section 3-19-1 even though more specific. Both apply to meetings of the Board, and should be read together.

### III.

We next address the issue of whether "superintendent's conferences" are "meetings" within the meaning of the two statutes. The Board argues that only the regular and special

statutory meetings need be open to the public, and that a "meeting" is not a meeting unless action is taken. The conclusion urged upon us is that because none was taken at superintendent's conferences and because the statutes only prohibit taking final action at other than a public meeting, school board members are free to meet and confer at will. Plaintiffs argue for a broader, more liberal interpretation. They state that whenever members of the Board gather on notice, at a designated time and place, for the purpose of dealing with Board business — that is a meeting, regardless of its nominal title.

Since our ultimate decision turns on which gatherings of the Board come within the term "meetings" as used in the public meetings statute, it is important to examine the record as to the types of gatherings, whether denominated meetings or conferences.

At one extreme are meetings called pursuant to section 123-30-8. The conduct of these statutory meetings is not in question. At the other extreme are casual, informal encounters of two or more members of the Board where school business might be discussed, but where it appears that such discussion was not the purpose of the encounter. These meetings are also not at issue. Every casual encounter of Board members does not fall within the public meeting statutes.

Between these two extremes, however, lie the gamut of meetings which *are* at issue. They are usually called conferences. There is diversity as to who called the gatherings, where they were held, whether an agenda was prepared, and whether they were held in conjunction with an open statutory meeting. However, all such gatherings shared the following attributes: (1) they were held following notice by someone in authority to all available members of the Board; (2) they were held with regularity at a particular designated time and place; (3) they were held for the purpose of dealing with one or more items of concern to the Board; and (4) they were not open to the public or the news media. In addition, matters brought up in these conferences usually reappeared

for a vote at the regular or special meetings. Since much of the work of the public meeting was already done at the conference, the public and news media were deprived of the discussions, the motivations, the policy arguments and other considerations which led to the discretion exercised by the Board and influenced the vote announced without discussion at the later public meeting. One has not participated in a public meeting if one witnesses only the final recorded vote.

The statutes' prohibition against making final policy decisions or taking formal action in other than a public meeting is not meant to permit "rubber stamping" previously decided issues. The statutes are remedial, designed *precisely* to prevent the abuse of "secret or 'star chamber' sessions of public bodies." *Dobrovolny v. Reinhardt*, 173 N.W.2d 837 (Iowa Sup. Ct. 1970). As a rule, these kinds of statutes should be interpreted most favorably for the beneficiary, the public. *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968). We note the provision for executive sessions in both sections 3-19-1 and 123-30-8. Executive sessions relate to subject matter not here involved and not raised by the parties herein. We therefore do not decide what are or are not proper subjects for executive sessions.

We hold that regardless of whether formal action is taken, when a "conference" (or any other kind of gathering) is preceded by notice, and held with regularity at specific times and places for the purpose of discussing Board business, it is a "meeting" within the meaning of C.R.S. 1963, 3-19-1. These conferences must be publicly scheduled and opened to the public and the news media. For the trend of authority in harmony with this view *see Sacramento Newspaper Guild v. Sacramento Co. Board of Supervisors*, 263 Cal.App.2d 41, 69 Cal. Rptr. 480 (1968); *City of Miami Beach v. Berns*, 245 So.2d 38 (Fla. 1971); *Board of Public Instruction of Broward Co. v. Doran*, 224 So.2d 693 (1969).

We wish to make it clear — and the parties agree — that the "Sunshine Act," Colo. Sess. Laws 1973, ch. 456, 3-37-402 at 1666, does not apply to school boards. A school board administers a school district. *Colo. Const.* Art. IX, Sec.

15. A school district is a subordinate division of the government and exercising authority to effectuate the state's education purposes. C.R.S. 1963, 123-10-1; *Newt Olson Lumber Co., supra; School District v. Pomponi,* 79 Colo. 658, 247 P. 1056 (1926). As such, school districts and the boards which run them are considered to be political subdivisions of the state. The Sunshine Act does not apply to political subdivisions; it only applies to state agencies, authorities and the legislature. Therefore, the Sunshine Act as presently written cannot apply to school boards.

IV.

We consider defendants' other claims of whether plaintiffs have standing, and whether injunctive relief is appropriate, to be without merit. Consequently we do not reach those issues.

Although the judgment is affirmed, the cause is remanded to the trial court with directions to vacate its injunction and to enter a permanent injunction consonant with the views expressed herein.