Ralph A. COLE, Plaintiff-Appellant,

v.

The STATE of Colorado, Mary Estill Buchanan, Secretary of the State of Colorado, and J.D. MacFarlane, Attorney General of the State of Colorado, Defendants-Appellees.

No. 81SA415.

Supreme Court of Colorado,
En Banc.

Oct. 31, 1983.
Rehearing Denied Jan. 9, 1984.

Ralph A. Cole, Leland R. Branting, Denver, for plaintiff-appellant.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., David K. Rees, Asst. Atty. Gen., Denver, for defendants-appellees.

**PER CURIAM.**

Senator Ralph Cole (appellant) appeals a declaratory judgment which held that legislative caucus meetings are subject to the Colorado Open Meetings Law, sections 24–6–401 & –402, C.R.S.1973 (1982 Repl.Vol. 10). Appellant argues that the Open Meet-ings Law is not applicable to legislative caucus meetings. Alternatively, appellant asserts that, even if this court finds that legislative caucuses are policy-making bodies subject to the Open Meetings Law, requiring that legislative caucus meetings be open to the public both conflicts with Article V of the Colorado Constitution and deprives appellant of his constitutional rights to freedom of speech and association as guaranteed by the Colorado and federal constitutions. We do not agree with appellant and accordingly affirm the district court.

## I.

In December 1973, appellant brought a declaratory judgment action against the Attorney General, the Secretary of State, and the State of Colorado alleging the Colorado Open Meetings Law, sections 24–6–401 & –402, C.R.S.1973 (1982 Repl.Vol. 10), to be unconstitutional and asserting that the law should be construed so as not to apply to legislative caucuses. Appellant subsequently filed an amended complaint challenging the constitutionality of the statute on the grounds that it violates his rights to freedom of speech and association as guaranteed by both the Colorado and federal constitutions. *U.S. Const.* amend. I; *Colo. Const.* art. II, § 10.

Subsequently, appellant filed a motion for summary judgment and the state filed a motion for partial summary judgment. Appellant's motion was denied. The state's motion for partial summary judgment was granted. The district court held that the Open Meetings Law does not conflict with Article V, sections 12 and 14 of the Colorado Constitution. On February 28, 1979, the court conducted a hearing to determine whether legislative caucuses were subject to the Open Meetings Law. On October 9, 1979, the district court ruled that legislative caucuses are de facto bodies of the General Assembly and are subject to the Open Meetings Law. Appellant's motion for new trial was denied.

## II.

■ The Colorado Open Meetings Law, section 24–6–402, C.R.S.1973 (1982 Repl.Vol. 10), is an initiated statute adopted in 1972 pursuant to *Colo. Const.* art. V, § 1 (1876, amended 1980). It provides in pertinent part:

"(1) *All meetings of two or more members of any board,* committee, commission, *or other policy-making or rule-making body* of any state agency or authority or *of the general assembly* at which *any public business* is discussed or at which any formal action may be taken by such board, committee, commission, or other policy-making or rule-making body *are declared to be public meetings open to the public at all times,* except as may be otherwise provided in the state constitution.

"(2) Any meetings at which the adoption of any proposed policy, position, resolution, rule, regulation, or formal action occurs or at which a majority or quorum of the body is in attendance, or is expected to be in attendance, *shall be held only after full and timely notice to the public.*

. . . .

"(4) *No resolution,* rule, regulation, ordinance, or formal action of a board, committee, commission, or other policy-making or rule-making body *shall be valid unless taken or made at a meeting that meets the requirements of subsections (1) and (2) of this section.*"

(Emphasis added.) The Colorado Open Meetings Law was clearly intended to afford the public access to a broad range of meetings at which public business is considered. *Benson v. McCormick,* 195 Colo. 381, 578 P.2d 651 (1978); *see also* section 24–6–401, C.R.S.1973 (1982 Repl.Vol. 10) (it

is declared to be the policy of this state that formation of public policy is public business and may not be conducted in secret).

We have, moreover, interpreted Public Meetings Laws broadly to further the legislative intent that citizens be given a greater opportunity to become fully informed on issues of public importance so that meaningful participation in the decision-making process may be achieved. In *Bagby v. School District No. 1,* 186 Colo. 428, 528 P.2d 1299 (1974), we held "superintendent conferences" to be "meetings" within the meaning of C.R.S.1963, 3–19–1 [1] and stated:

"Although no final formal action was taken, Board matters were thoroughly discussed at superintendent's conferences. All members of the Board were given advance notice and usually all attended. The record shows that the agenda was quite extensive and many of the same matters were acted upon later in the properly called regular or special meetings which the public attended. However, they usually were given only cursory treatment and put to a vote, thereby indicating that the underlying pros and cons for the final decisions had been previously dispensed with during the superintendent's conference when the public was excluded. . . . The statutes' prohibition against making final policy decisions or taking formal action in other than a public meeting is not meant to permit 'rubber stamping' previously decided issues. The statutes are remedial, designed *precisely* to prevent the abuse of 'secret or "star chamber" sessions of public bodies.' "

*Id.* at 430, 434, 528 P.2d at 1300, 1302 (citation omitted) (emphasis in original). Two years later, we reaffirmed the rationale and holding of *Bagby, supra,* and held a collective bargaining agreement to have been

---

**1.** The Public Meetings Law, C.R.S.1963, 3–19–1 (current version at section 29–9–101, C.R.S. 1973 (1977 Repl.Vol. 12 & 1982 Supp.)), states in pertinent part:

"All meetings of any board, commission, committee or authority of this state, or a political subdivision of the state, created by law, and supported by the law in its activities in whole or in part with public funds, are declared to be public meetings and open to the public at all times . . . ."

In *Bagby,* the court held that both 1965 Perm. Supp., C.R.S.1963, 123–30–80 (Meetings of the Board of Education) and C.R.S.1963, 3–19–1 applied to "school board" meetings, but that the Open Meetings Law did not apply to "school board" meetings.

reached in violation of the Public Meetings Law. *Littleton Education Association v. Arapahoe County School District,* 191 Colo. 411, 553 P.2d 793 (1976).

This court's broad interpretation of "meetings" is in accord with the constructions given "meetings" by other courts which have examined comparable Open Meetings Laws. In *Sacramento Newspaper Guild v. Sacramento Co. Board of Supervisors,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968), a case we cited with approval in *Bagby, supra,* the California Court of Appeals held the California equivalent to the Open Meetings Law to be applicable to informal meetings, and stated:

> *"There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices."*

*Id.* at 50, 69 Cal.Rptr. at 480 (emphasis added); *accord People ex rel. Difanis v. Barr,* 78 Ill.App.3d 842, 34 Ill.Dec. 223, 397 N.E.2d 895 (1979).

Several state legislatures have sought to narrow the scope of their respective Open Meetings Laws by expressly exempting "legislative caucuses" from the Open Meeting Law's requirements.[2] Although the Colorado General Assembly has amended the initiated statute, adopted in 1972, by providing exemptions for certain gatherings, legislative caucuses have not been exempted from the Colorado Open Meetings Law.[3]

Appellant argues that legislative caucuses are beyond the intended reach of the Open Meetings Law and are therefore not subject to the requirement that meetings be open to the public. At the declaratory

judgment hearing, however, several prominent legislators testified to the critical role played by legislative caucuses in the lawmaking process. Senator Regis Groff, the Senate minority leader, testified:

> "[I]t's fair and accurate to say that they [caucuses] play a major part. Caucus positions are taken in the party caucus meetings. *Caucuses ... take binding positions ... which means when the caucus is over and the action is taken on the floor, the vote is predetermined,* because there are binding caucuses. There are 18 votes that are required in the Senate to pass a measure, and those 18 votes have been determined and are bound; and so *in effect, in that particular case, what appears on the Senate floor is simply acting out of the procedure, when, in fact, the issue has been settled in caucus."*

(Emphasis added). Representatives Ronald Strahle and Ruben Valdez, both former speakers of the Colorado House of Representatives, testified to the importance of legislative caucuses, especially in regard to legislative appropriations.

Although state legislators are not compelled to vote on the floor in conformity with the vote of the majority at caucus, certainly the vote of a legislator contrary to the vote of the majority at caucus would, in all likelihood, adversely affect the legislator's relationship with other members of the caucus. The undesirable effects attendant to a vote contrary to the majority at the caucus bear hard upon a legislator contemplating such independent action. In effect, the floor vote on a measure when a caucus position has been taken, especially in appropriation matters, is little more than a formality.

 While a legislative caucus is not an official policy-making body of the General Assembly, it is, nonetheless, a "de facto"

---

**2.** *See Ariz.Rev.Stat.Ann.* § 38–431.08 (Supp. 1981) ("The provisions of this article do not apply to: 1. Any judicial proceeding of any court or any political caucus."); *Conn.Gen. Stat.* § 1–18a(b) (1981) ("'Meeting' shall not include: Any chance meeting, or a social gathering neither planned nor intended for the purpose of discussing matters relating to official

business; ... a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency....").

**3.** *See* section 24–6–402(2.1), C.R.S.1973 (1982 Repl.Vol. 10).

policy-making body which formulates legislative policy that is of governing importance to the citizens of this state. The intent of the Open Meetings Law is that citizens be given the opportunity to obtain information about and to participate in the legislative decision-making process which affects, both directly and indirectly, their personal interests. A citizen does not intelligently participate in the legislative decision-making process merely by witnessing the final tallying of an already predetermined vote. As a rule, these types of statutes should be interpreted most favorably to protect the ultimate beneficiary, the public. *Bagby, supra.* We hold that legislative caucus meetings are "meetings" of policy-making bodies within the meaning of the Colorado Open Meetings Law and are therefore subject to the Open Meetings Law's requirement that "meetings" be "public meetings open to the public at all times."

## III.

Appellant asserts in the alternative that, even if this court finds that legislative caucus meetings are meetings of policy-making bodies within the meaning of the Open Meetings Law, the Open Meetings Law is unconstitutional because it conflicts with Article V, sections 12 and 14 of the Colorado Constitution. We disagree.

## A.

■ *Colo. Const.* art. V, § 12 provides in pertinent part: "Each house shall have power to determine the *rules* of its proceedings...." (Emphasis added.) Appellant contends that the trial court's finding that legislative caucus meetings are "meetings" within the meaning of the Open Meetings Law and that they therefore must be open to the public conflicts with art. V, § 12 which authorizes the General Assembly to establish its own rules. Appellant claims that the long-standing practice of closing legislative caucus meetings is, in effect, a "rule" established by the Senate pursuant

to the authority granted it by *Colo. Const.* art. V, § 12.

The Colorado Open Meetings Law is an initiated law adopted pursuant to *Colo. Const.* art. V, § 1. The Colorado General Assembly has amended the law as originally adopted. For example, in 1977, the Colorado General Assembly added section 24–6–402(2.1), C.R.S.1973 (1982 Repl.Vol. 10), which expressly exempts social meetings at which discussion of public business is not the central purpose. The Colorado General Assembly has, however, at no time sought to exempt legislative caucus meetings from the requirements of the Open Meetings Law,[4] nor has either chamber of the General Assembly adopted a rule purporting to allow closure of caucus meetings. Both the Senate and the House of Representatives have accepted the Open Meetings Law's requirements as "rules" for governing their internal affairs. We hold, therefore, that the Open Meetings Law does not conflict with Article V, section 12 of the Colorado Constitution.

## B.

*Colo. Const.* art. V, § 14 provides: "The sessions of each house, and of the committees of the whole, shall be open, unless when the business is *such as ought to be kept secret*" (emphasis added). Appellant contends that the Open Meetings Law is at variance with art. V, § 14 because the statute's requirement that "meetings" be open to the public conflicts with what is in his view a legislative determination that caucus meetings are sessions "such as ought to be kept secret."

■ We agree with appellant that the Constitution expressly authorizes the General Assembly to conduct certain business in secret. Each chamber of the General Assembly, however, must make the definitive determination regarding what business "is such as ought to be kept secret."

■ In view of the General Assembly's carefully considered endorsement of the Open Meetings Law and its concomitant

4. *See supra* note 2.

failure to exempt legislative caucus meetings from the Act's requirements, we conclude that both the Senate and the House of Representatives have determined that the business of legislative caucuses is not "such as ought to be kept secret."[5] Therefore, the Open Meetings Law does not conflict with *Colo. Const.* art. V, § 14.

### IV.

Appellant also asserts that the Open Meetings Law is unconstitutional because it violates his rights to freedom of speech and association as guaranteed by the Colorado and federal constitutions. We disagree.

It is a well recognized constitutional principle that the government may adopt reasonable time, place, and manner regulations which do not discriminate among speakers and ideas in order to further an important governmental interest. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). If we assume that there is a First Amendment issue and that the Open Meetings Law impairs in a minor way appellant's right to freedom of speech, we reach a conclusion different from that asserted by appellant. Appellant and other legislators may perhaps refrain from discussing certain business matters for fear of public disclosure of sensitive matters. We are of the opinion that the restraints on appellant's freedom of speech are reasonable and justified in view of the important governmental interest furthered by the Open Meetings Laws: The public's right of access to public information. The United States Supreme Court has recognized that the First Amendment's guarantee to freedom of speech necessarily protects the right to receive ideas and information. *Virginia Pharmacy Board v. Virginia Consumer Counsel,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Kleindienst v. Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *see also La-*

*mont v. Postmaster General,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). The First Amendment plays an important role in affording the public access to discussion, debate, and the dissemination of information and ideas. *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). A free self-governing people needs full information concerning the activities of its government not only to shape its views of policy and to vote intelligently in elections, but also to compel the state, the agent of the people, to act responsibly and account for its actions.

We conclude that the Open Meetings Law strikes the proper balance between the public's right of access to information and a legislator's right to freedom of speech. The people have determined that they are willing to assume the detriment of a potential stifling of discussion among legislators to secure the advantages of open government. *Dorrier v. Dark,* 537 S.W.2d 888 (Tenn. 1976). The Open Meetings Law does not forbid political discussion among legislators, and does not regulate the content of their discussions. The Colorado Open Meetings Law merely requires that business meetings of policy-making bodies of the General Assembly be open to the public. The Open Meetings Law, as we view it, is a reasonable legislative enactment which seeks to balance the public's right of access to public information with the right of legislators to speak candidly and to associate with whomever they choose. *See also People ex rel. DiFanis v. Barr,* 83 Ill.2d 191, 46 Ill.Dec. 678, 414 N.E.2d 731 (1980).

Accordingly, we affirm the declaratory judgment entered in this case.

DUBOFSKY, J., does not participate.

---

**5.** In 1977, the General Assembly amended section 24–6–402(1), C.R.S.1973 (1982 Repl.Vol. 10), replacing the original "legislature," with "general assembly." It is obvious that the General Assembly intended that its policy-making bodies remain subject to the Open Meetings Law's requirements.